02-10-120-CV
















 

 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00120-CV

 

 


 
 
 BARRY M. WOOD, JR.
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 TEXAS DEPARTMENT OF PUBLIC SAFETY
 
 
  
 
 
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM COUNTY COURT
 AT LAW NO. 2 OF TARRANT
COUNTY

 

------------

 

OPINION

 

------------

          Barry Montgomery Wood Jr., appeals pro
se the denial of his petition for an occupational license.

          Mr. Wood’s driver’s license was
suspended in 2005 for a number of offenses, including two convictions for
driving while intoxicated and one for driving while his license was
invalid.  The last of these suspensions
was lifted in 2007.  Mr. Wood was
incarcerated in 2008 for an unrelated offense and released in March 2010 under
a three-year term of supervised release. 
As part of his supervised release, Mr. Wood secured employment, and he is
required to attend AA meetings, counseling sessions, and submit to random drug
testing.

Mr.
Wood applied to renew his driver’s license but was denied because he owes
$8,580.00 in surcharges under the Driver Responsibility Program.  The program assesses surcharges to drivers
for various driving-related convictions and requires suspension of a person’s driver’s
license if he fails to pay the amounts assessed.  Tex. Transp. Code. Ann. §§ 708.002–.158 (Vernon Supp. 2010). 
The suspension continues until the driver pays the surcharges or enters
into an installment payment plan.  Id. § 708.152.

Mr.
Wood is indigent and unable to pay the surcharges to lift the suspension.  The Department of Public Safety (DPS) sent Mr.
Wood a letter explaining that DPS would be implementing various programs to
reduce or waive surcharges for those who cannot pay them, but none of those
programs will be in effect until 2011. 
The letter also provided Mr. Wood instructions for applying for an
occupational license.

Mr.
Wood then petitioned the trial court for an occupational license, claiming that
his license was suspended for his failure to pay the surcharges and that he has
an essential need for transportation to and from work and other locations as
required by his probation plan.  There is
no reporter’s record of the hearing, but the clerk’s record shows that DPS
submitted a memorandum after the hearing in which it argued that a person
suspended for failure to pay the Driver Responsibility Program surcharges is
not of the class of people to which an occupational license may be granted.[1]  The court denied Mr. Wood’s petition for an
occupational license “for petitioner’s failure to pay surcharges or enter into
an installment agreement.”  Mr. Wood
appealed.  We construe his argument on
appeal to be that the court erred in denying his petition because he is of the
class of persons eligible for an occupational license and that he demonstrated
essential need.  For the reasons below,
we find that Mr. Wood should not have been denied an occupational license for
his failure to pay the surcharges.

Standard
of Review

In
a trial to the court where no findings of fact or conclusions of law are filed,
the trial court’s judgment implies all findings of fact necessary to support
it.  Pharo v. Chambers Cnty., 922 S.W.2d 945, 948 (Tex.
1996).  In cases such as this one where
no reporter’s record was made, we indulge every presumption in favor of the
trial court’s judgment.  See Bryant v.
United Shortline Inc. Assurance Servs., N.A., 972 S.W. 2d 26, 31 (Tex. 1998).

Discussion

The
occupational license statute provides for “[a] person whose license has been
suspended for a cause other than a physical or mental disability or impairment
or a conviction under Section 49.04, Penal Code” to petition the court for an
occupational license.  Tex.
Transp. Code Ann. § 521.242 (Vernon 2007).[2]  The petition for an occupational license must
describe the petitioner’s “essential need” for the license, which is defined as
a need to operate a motor vehicle

(A)    
in the performance of an occupation or trade or
for transportation to and from the place at which the person practices the
person’s occupation or trade;

 

(B)    
for transportation to and from an educational
facility in which the person is enrolled; or

 

(C)   
in the performance of essential household
duties.

 

Id.
§ 521.241 (Vernon 2007).[3]  While Mr. Wood had previously been convicted
of driving while intoxicated, the corresponding suspensions had all been lifted
as of September 2007.  The only current
suspension on Mr. Wood’s driving license is for his failure to pay the Driver
Responsibility Program surcharges.

Statutory construction is a
legal question we review de novo. City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008).  In construing statutes, we ascertain and give
effect to the legislature's intent as expressed by the language of the statute.
 Id.  We construe a statute according to the plain
meaning of its words unless a contrary intention is apparent from the context,
or unless such a construction leads to absurd results.  Id.
at 625–26; see also Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,
145 S.W.3d 170, 177 (Tex. 2004) (noting that when statutory text is
unambiguous, courts must adopt the interpretation supported by the statute’s
plain language unless that interpretation would lead to absurd results).

DPS
argues that construing the statute by its plain language would lead to an
absurd result.  There is no statutory
limit on the number of successive occupational licenses that may be granted to
a driver who has been suspended for reasons other than criminal
convictions.  See Tex. Transp. Code Ann. § 521.242.  Because a suspension is in
effect until the payment of the surcharges, id.
§ 708.152(b), DPS argues that a suspended driver could indefinitely avoid
paying the surcharges by continuously petitioning for occupational licenses.

The
statute is not ambiguous as to who may apply for an occupational license, and
thus we rely on its plain meaning.  See Mega Child Care, 145 S.W. 3d at 177.  Mr. Wood’s license is not
suspended for any of the listed reasons which would prohibit him from obtaining
an occupational license.  The statutory list
is exclusive, and we cannot expand it.  Cf. Christus Health v. Beal, 240 S.W.3d
282, 286 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating that “[u]se of
the word ‘including’ makes the list nonexclusive,” and noting that before the statute
was amended to add “including” in the definition, list of “health care
providers” was an exclusive list); Tex. Gov’t Code
Ann. § 311.005(13) (providing that “includes” indicates an intent to create a
nonexclusive list).  If the legislature
had intended that drivers suspended for failure to pay surcharges be ineligible
for occupational licenses, we believe it would have said so.  Because it has not, Mr. Wood is eligible to
petition for an occupational license.

The
Occupational License Act anticipates that some drivers would be unable to pay
their surcharges.  Tex.
Transp. Code. Ann. §§ 708.157(c), 708.158 (Vernon Supp.
2010).  DPS has indicated a
concern that indigent suspended drivers would be effectively permanently
suspended.  See 32 Tex. Reg. 9295
(2007), adopted 33 Tex. Reg. 2041 (2008) (to be codified as an amendment
to 37 Tex. Admin. Code § 15.162).  The legislature has addressed this problem
prospectively though statutes which require DPS to establish indigency
programs.  See Tex. Transp. Code. Ann. § 708.157 (c), 708.158; 35 Tex. Reg. 9920 (2010) (to be
codified at 37 Tex. Admin. Code § 15.163).[4]  The stated intent in creating the programs
was to “ensur[e] the license holder remains in compliance with the law and in
compliance with the surcharge program.”  35 Tex. Reg. 9920 (2010).

Even
when construing a statute that is unambiguous, the Code Construction Act allows
for consideration of the object sought to be obtained and the legislative
intent.  Tex. Gov’t
Code Ann. § 311.023; see also Tex. Dep’t of Transp. v. City of Sunset
Valley, 146 S.W.3d 637, 642 (Tex. 2004). 
The very intent of the indigency program belies DPS’s argument in this
appeal that construing section 521.242 according
to its plain language would lead to an absurd result.  That result is that a person whose license is
suspended because of his inability to pay surcharges may be able to obtain a
license to legally drive for certain essential needs.  That is the same result the legislature and
DPS has deemed appropriate.  See
Tex. Transp. Code. Ann. § 708.157(c), 708.158; 35 Tex. Reg.
9920 (2010) (to be codified at 37 Tex. Admin. Code §
15.163).  We therefore believe
that the legislature intended to allow a driver suspended under the Driver
Responsibility Act to petition for an occupational license.

The
statute is clear in its use of mandatory language that “the judge who hears the
petition shall sign an order finding whether an essential need exists.”  Tex. Transp. Code. Ann. § 521.244(a).  The
trial court did not deny Mr. Wood based on his lack of essential need as
required by the statute.  Rather, the trial
court specified that it denied Mr. Wood’s petition based on his “failure to pay
surcharges or enter into an installment payment agreement.”  Accordingly, the trial court’s denial of Mr.
Wood’s petition was without reference to any guiding rule or principle and was
an abuse of discretion.

          The trial court erred in denying Mr.
Wood’s petition based on his failure to pay his surcharges.  We reverse the trial court’s judgment and
remand the case to the trial court to determine Mr. Wood’s essential need as
required by the statute.

 

 

                                                                   
 
 
 
 
 
 
 
 
 LEE GABRIEL

                                                                   
 
 
 JUSTICE

 

PANEL:  
 
 
 
 
 
 
 GARDNER, 
 
 
 
 
 
 WALKER, and 
 
 
 
 
 
 GABRIEL, JJ. 

 

DELIVERED:  November 24, 2010











[1]In
its post-hearing memorandum of law, DPS argued that “license” is defined in the
transportation code as including an occupational license, Tex. Transp. Code
Ann. § 521.001(6) (Vernon 2007), and therefore, because the surcharge statute
suspends a person’s “license” for failure to pay, id. § 708.152(b), a person suspended under the surcharge statute
may not be granted an occupational license because that license too is
suspended.  We note that this is not the
same argument that DPS makes on appeal. 
We do however believe it is clear from the record that DPS has
consistently argued in this case that, for various reasons, a person suspended
for failure to pay surcharges is ineligible for an occupational license.





[2]
Section
49.04 of the penal code concerns driving while intoxicated.  Tex. Pen. Code Ann.
§ 49.04 (Vernon 2010). 





[3]
DPS does not appear to dispute Mr. Wood’s essential need for an occupational
license.





[4]
We
note that these programs are not yet in effect, and thus Mr. Wood is unable to
take advantage of them at this time.